IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| TIMOTHY J. BENTLEY, | ) | CV 09-01-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CONOCOPHILLIPS PIPELINE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiff Timothy J. Bentley was employed as an operator by Defendant

ConocoPhillips Pipeline Company ("ConocoPhillips").  ConocoPhillips suspended

Bentley on November 12, 2008, and terminated him by way of letter dated November 14, 2008.

Bentley brought this action in January 2009 alleging a claim under Montana's Wrongful Discharge from Employment Act (Count 9).  Additionally, he alleges claims of wrongful inducement (Count 1), negligent misrepresentation (Count 2), constructive fraud (Count 3), negligence (Count 4), breach of contract (Count 5), breach of the implied covenant of good faith and fair dealing (Count 6), failure to pay wages (Count 7), failure to pay overtime (Count 8), and punitive damages (Count 10).

There are two motions for summary judgment pending.  In the first, Bentley moves for summary judgment on his claims for unpaid wages, breach of contract,[1] and wrongful inducement.  In the second, ConocoPhillips cross moves on the above claims, as well as moves for summary judgment on all remaining claims except wrongful discharge.  For the reasons that follow, Bentley's motion for summary judgment fails, while ConocoPhillips' motion succeeds, for the most part.

---

[1]Nominally, Bentley moves for summary judgment on his claims for unpaid wages, unpaid overtime, and wrongful inducement, not breach of contract.  Mot. 1 (dkt #38).  However, his brief in support focuses on a breach of the employment contract rather than unpaid overtime.  Pl.'s Br. 9 (dkt #39).  ConocoPhillips treated Bentley's summary judgment motion, in part, as one for breach of contract.

## II.  Factual Background

Sometime in 2006, Bentley and his wife decided they wanted to move away from Seattle.  Def.'s SGI ¶ 2.  Bentley began applying for jobs outside of the Puget Sound area, and on December 16, 2006, he applied for a position with ConocoPhillips as a terminal operator.  Id. ¶ 1.  On March 23, 2007, ConocoPhillips offered Bentley a position at its Missoula facility.  Id. ¶ 5.  The offer letter stated that "subsequent changes to [his] salary will be based on [his] performance and our compensation policy."  Id. ¶ 7.  He accepted the offer.

Bentley claims he took the job based on "promises and representations" made by ConocoPhillips' Missoula facility supervisor, Dave Floyd.  Pl.'s SOF ¶ 1. Relevant here are two such promises.  First, he states Floyd promised any time he was "called out" after hours but did not have to leave home, he would be paid the greater of two hours at time and a half, or the actual hours worked at time and a half.  Id. ¶ 3.  If he had to leave his house, he would be paid the greater of four hours at time and a half or the actual hours worked at time and a half.  Id.  Second, he states Floyd promised him he would work a "rotating schedule."  Id. ¶ 13. Bentley does not specifically define what the promised  "rotating schedule" was,

but notes it would have allowed him to "partak[e] in more outdoor activities."[2]  Id. ¶ 14.  It is unclear when these alleged promises were made.

For the first seven months of his employment, Floyd served as Bentley's supervisor.  Id. ¶ 5.  During that time, Bentley was paid for his call-out hours as promised.  Id. ¶ 4.  Then, Steven Thomas replaced Floyd as supervisor.  Id. ¶ 5.  Thomas informed Bentley that he was recording his call-out time incorrectly.  Id. ¶ 9; Def.'s SGI ¶ 17.  Thomas told Bentley under company policy he would be paid the greater of time and a half for actual time worked, or 2 hours straight time if he did not have to leave the house or 4 hours straight time if he did.  Def.'s SGI ¶¶ 12-13.  Bentley was paid per the terms of this call-out policy until his discharge because Thomas told him "that is how it's supposed to be done."  Id. ¶ 30.  Bentley claims he never worked a rotating schedule.[3]  Pl.'s SOF ¶ 18.

In October of 2008, Bentley reported to ConocoPhillips' Employee Assistance Program that the schedule under Thomas required employees to work while fatigued, and this created an unsafe work environment.  Def.'s SGI ¶ 31.  He

---

[2]In a pleading, Bentley parenthetically describes a rotating schedule as follows: "rotating schedule (*e.g.*, working four days and having three days off)."  Pl.'s Br. 12 (dkt #39).

[3]One co-worker stated in deposition that he worked a "rotating schedule" under Thomas.  Turner Dep. 39:6, Jan. 5, 2010 (dkt # 40-5).  It is unclear if this employee had a rotating schedule and Bentley did not, or if the two men had a different understanding of what constitutes a rotating schedule.

also claims he complained about his overtime pay.  Pl.'s SOF ¶¶ 19, 23.

Bentley's last day of work was November 12, 2008.  Def.'s SGI ¶ 24.  He worked 64 hours during his final pay period.  Id. ¶ 26.  ConocoPhillips' policy is to pay its employees on the final day of the pay period for their regular pay, and then pay overtime and call-out hours at the end of the subsequent pay period.  Id. ¶¶ 20, 23.  Consistent with that policy, on November 14, 2008, ConocoPhillips paid Bentley for his entire final pay period, both the 64 hours he worked and the two days–November 13 and 14, 2008–he did not.  Id. ¶ 26.  On November 18, 2008, Bentley was paid for his overtime and call-out hours, minus $384.77 of regular time to account for the overpayment in his prior check.  Id. ¶ 28.

### III.  Standard

Summary judgment is granted when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because a summary judgment terminates a case without a trial, courts should be cautious in granting them.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  This is not to say, however, that summary judgment is disfavored when the standards are met.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

A party is entitled to summary judgment where the documentary evidence

produced by the parties permits only one conclusion.  <u>Anderson</u>, 477 U.S. at 251.

The Court must determine whether a fair-minded jury could return a verdict for the

nonmoving party.  <u>Id.</u> at 252.  The party seeking summary judgment bears the

initial burden of informing the Court of the basis for its motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which demonstrate the

absence of any genuine issue of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323.

Where the moving party has met its initial burden with a properly

supported motion, the party opposing the motion "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 248. The nonmoving

party may do this by use of affidavits (including his own), depositions, answers to

interrogatories, and admissions.  <u>Id.</u>

In evaluating the appropriateness of summary judgment the Court must first

determine whether a fact is material; and if so, it must then determine whether

there is a genuine issue for the trier of fact, as determined by the documents

submitted to the Court.  The applicable substantive law will identify which facts

are material.  Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude entry of summary judgment.

Factual disputes that are irrelevant or unnecessary to the outcome are not

considered.  Anderson, 477 U.S. at 248.

## IV.  Analysis

### A.  Common Law Claims

Bentley claims ConocoPhillips promised him a "rotating schedule" and to

pay him overtime wages whenever he was "called out" after hours.

ConocoPhillips only paid him overtime wages for the first seven months of his

employment, and it never gave him a rotating schedule.  Based on such

allegations, Bentley brought claims for breach of contract, breach of the implied

covenant of fair dealing, negligence, negligent misrepresentation and constructive

fraud.

Montana's Wrongful Discharge from Employment Act ("WDEA")

"provides the exclusive remedy for a wrongful discharge from employment."

Mont. Code Ann. § 39-2-902.  "[N]o claim for discharge may arise from tort or

express or implied contract."  Id. § 39-2-913.  This preemption does not apply to

all tort or contract claims arising in the employment context; rather the statute

preempts only common law claims "for discharge."  Beasley v. Semitool, Inc., 853

P.2d 84, 86 (Mont. 1993).  Two cases illustrate this distinction.

In Kulm v. Montana State University-Bozeman, a case on point, a plaintiff

7

claimed his employer promised to renew his contract annually for the first four years.  Kulm v. Montana State University-Bozeman, 948 P.2d 243, 246 (Mont. 1997).  After the first year, it was not renewed, and he brought a negligent misrepresentation claim.  Id.  The court found the claim was preempted because it was inextricably intertwined with–and the damages were caused by–the discharge. Id.

In Beasley v. Semitool, Inc., a plaintiff claimed his employer promised him stock options, bonuses, and opportunities for advancement.  Beasley, 853 P.2d at 84.  The plaintiff resigned and then filed a complaint against his employer for breach of contract and wrongful discharge.  Id. at 85.  The court found the claim was independent of his resignation because he was not discharged and his voluntary resignation did not cause the damages from the alleged breach.  Id. at 86-87.  So, there was no preemption of the breach of contract claim.

The facts of the instant case are in line with Kulm, and that case dictates the outcome here.  Bentley did not resign.  He was discharged.  Bentley claims he was wrongfully discharged in retaliation for complaining about his pay and schedule. His common law claims, which involve his pay and schedule, are "inextricably intertwined with and based upon his termination from employment."  Kulm, 948 P.2d at 246.  As such, ConocoPhillips is entitled to summary judgment on

8

Bentley's claims for breach of contract, breach of the implied covenant of fair

dealing, negligence, negligent misrepresentation and constructive fraud.

**B.  Statutory Claims**

    1.  Unpaid Wages

        Under 29 U.S.C. § 206 and Mont. Code Ann. § 39-3-205, ConocoPhillips

was required to pay Bentley all of his wages.  Bentley has two related claims for

unpaid wages.  First, he argues ConocoPhillips did not pay him for the "regular

hours" he worked during the last pay period.  Compl. ¶ 103.  Second, he claims

ConocoPhillips did not pay him overtime in violation of Montana law.  Id. ¶ 110.

Each claim is discussed in turn.

        *a.  Regular Hours*

        Bentley moves for summary judgment on his claim that he was not paid his

regular wages for his last pay period.  He argues he worked but was not paid for

64 hours of regular time, and ConocoPhillips wrongfully deducted $384.77 from

his overtime pay.  ConocoPhillips counters that it paid Bentley for all of his

regular time on November 15, 2008, and this included pay for two days he did not

work.  Thus, $384.77 was deducted from his final paycheck issued on November

18, 2008.  There is no genuine issue of fact here and ConocoPhillips is entitled to

summary judgment on the claim.

It is uncontested that Bentley worked 64 hours of regular time and 37 hours of overtime in his last pay period ending November 15, 2008.  Pl.'s SOF, ¶¶ 30-34.  ConocoPhillips paid Bentley his entire regular time salary for that pay period on November 14, 2008.  Def.'s SGI ¶ 25.  He was paid his full salary despite the fact that he did not work two days due to suspension.  Id. ¶ 26.  On November 18, 2008, ConocoPhillips paid Bentley his overtime and call-out hours, minus $384.77.  Id. ¶ 28.  The deduction accounts for Bentley previously being paid for two days he did not work.  The evidence permits only one conclusion: Bentley was paid for all the hours worked in his last pay period up to November 14, 2008.[4]

Bentley tries to evade this conclusion in two ways.  First, he argues there is a genuine issue whether he was suspended with or without pay for those two days.  The issue is irrelevant and it is disingenuous.  Whether he was suspended with or without pay is irrelevant because Bentley's claim is for the "regular hours" he "worked" during his last pay period.  His claim is not for hours he could have worked but did not due to suspension.  Compl. ¶ 103; Pl.'s Br. 7-8 (dkt # 39). Bentley tries to create a genuine issue by noting ConocoPhillips suspended him

---

[4]ConocoPhillips also seeks attorneys fees, but does not argue on what grounds.  Montana law provides "an employee who wins a judgment for wages due against an employer a vehicle by which to receive attorneys fees and thus be made whole."  Old Elk v. Healthy Mothers, 73 P.3d 795, ¶ 26 (Mont. 2003) (quoting Glaspey v. Workman, 749 P.2d 1083, 1084 (Mont. 1988)) (emphasis in original).  ConocoPhillips, as an employer, is not entitled to fees.  See Mont. Code Ann. § 39-3-214.

but it never told him he was suspended without pay.  Pl.'s SGI ¶ 111.  He then offers a self-serving affidavit that he believes he was suspended with pay.  Id. ¶ 116.  Such tenuous evidence and belief is belied both by the record and Bentley's own past pleadings.  In his Complaint, Bentley stated he "was suspended without pay."  Compl. ¶ 54.  His November 14, 2008 termination letter stated he would be paid through November 12, 2008.  This new found belief that he was suspended with pay is a weak attempt to preserve a failed claim, not a genuine issue of fact.

Second, Bentley argues ConocoPhillips did not pay him $1,260.46 in holiday pay.  This is a new theory of liability for his unpaid wages claim.  In his Complaint, Bentley specifically alleges ConocoPhillips did not pay him for the "regular hours" he worked "during his last pay period."  Compl. ¶ 103.  It says nothing about holiday pay, and provided ConocoPhillips no notice of such a claim. Bell Atlantic Corp. v. Twombly 550 U.S. 544, 555 (2007) (noting a complaint must provide fair notice of the claim and "the grounds upon which it rests"). Bentley cannot use a claim he did not plead to defeat summary judgment.  See, e.g., Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006).

ConocoPhillips is entitled to summary judgment on the unpaid wages claim.

    *b.  Overtime Pay*

ConocoPhillips also moves for summary judgment on Bentley's claim that

he was not paid overtime as required by Montana law.  Under Mont. Code Ann. §

39-3-405,[5] ConocoPhillips had to pay Bentley at a rate of not less than one-and-a-

half times his hourly wage rate if he worked more than 40 hours in a week.

ConocoPhillips argues Bentley was paid overtime according to its call-out policy,

and that policy complies with Montana law.

     Bentley does not dispute that ConocoPhillips' policy is consistent with the

law.  Instead, he identified at least one time in November of 2007 that his hours of

overtime were less than the hours he was paid.[6]  Payroll records for the week

ending November 9, 2007 show he worked 41 hours of regular time that week.

Pl.'s SGI ¶ 131.  Thus, he worked 1 hour of overtime.  In addition, records show

he worked 16 hours of scheduled overtime for that pay period.  Id.  It appears that

he should have been paid for 17 hours of overtime, but he was only paid for 16.

Id.  There is a genuine issue whether he should have been paid one additional hour

of overtime for that pay period, and therefore ConocoPhillips is not entitled to

summary judgment on Bentley's overtime claim.

---

     [5] Bentley's Complaint alleges ConocoPhillips violated Mont. Code Ann. § 29-3-405.
Compl. ¶ 111.  No such code exists.  ConocoPhillips presumed and the Court does too that
Bentley meant § 39-3-405.

     [6]Bentley actually argues ConocoPhillips did not follow its call-out policy.  That argument
is not relevant to whether Bentley was shorted overtime pay under Montana law.

## 2.  Wrongful Inducement

Bentley claims ConocoPhillips wrongfully induced him to move to Montana by misrepresenting the character and conditions of work that awaited for him there.  Under Montana law, wrongful inducement is defined as follows:

> A person or an entity doing business in this state may not induce, influence, persuade, or engage workers <u>to change from one place to another in this state</u> through or by means of deception, misrepresentation, or false advertising concerning the kind or character of the work, the sanitary or other conditions of employment, or as to the existence of a strike or other trouble pending between the employer and the employees at the time of or immediately prior to the engagement. Failure to state in any advertisement, proposal, or contract for the employment of workers that there is a strike, lockout, or other labor trouble at the place of the proposed employment when in fact a strike, lockout, or other trouble actually exists at that place is considered a false advertisement and misrepresentation for the purpose of this section.

Mont. Code Ann. § 39-2-303(1) (emphasis added).  No case law illuminates the meaning or applicability of the statute.

Bentley seeks summary judgment on his claim.  He argues it is undisputed that ConocoPhillips promised him a rotating schedule and overtime wages under its call-out policy, these representations induced him to move from Seattle, Washington to Missoula, Montana, and the promises were false.  Those claims are resolved in ConocoPhillips favor.

ConocoPhillips cross moves for summary judgment.  It argues that the

statute does not apply because the law provides redress only for intra-state moves. The argument is based on the language "change from one place to another in this state." ConocoPhillips contends the language can only be read to mean the statute does not apply because Bentley did not change from one place in Montana to another in Montana. Bentley agrees that the language is susceptible to only one interpretation, albeit a different one than ConocoPhillips proposes. He argues because the statute does not say "from one place [in this state] to another in this state" the statute clearly applies to his case. ConocoPhillips' argument is persuasive and consistent with the plain meaning of the statute.

It is the Court's "duty to construe the law as it is written." In re Estate of Magelssen, 597 P.2d 90, 94 (1979). A statute will not be interpreted further if the language is clear and unambiguous. Mont. Sports Shooting Ass'n v. State, 185 P.3d 1003, 1006 (Mont. 2008). The phrase "engage workers to change from one place to another in this state" only applies to intra-state moves as ConocoPhillips contends. The statute prevents Montana businesses from inducing workers to change location for work based on false promises. "[I]n this state" qualifies which businesses are subject to the rule and the same language constrains the place of fraudulent inducement to movement from "one place to another in this state. . . ." Mont. Code Ann. § 39-2-303(1). ConocoPhillips is entitled to summary judgment

14

on this issue.

### 3.  Retaliation and Punitive Damages

Under Montana law, a plaintiff may "recover punitive damages . . . if it is established by clear and convincing evidence that the employer" discharged the employee "in retaliation for the employee's . . . reporting a violation of public policy."  Mont. Code Ann. §§ 39-2-904(1)(a), 39-2-905(2).  Public policy is "a policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule."  Id. § 39-2-903(7).

ConocoPhillips moves for summary judgment on Bentley's claim for punitive damages.  Bentley filed a complaint with ConocoPhillips that he was not being properly paid, and he claimed the schedule forced employees to work while fatigued, creating a safety risk.  Pl.'s SGI ¶¶ 43-45.  Bentley argues his complaint about the schedule and workplace safety was a report of a violation of public policy because at the time he filed his report every Montana employer was required to "furnish a place of employment that is safe" and "to protect the life, health, and safety of [its] employees."  Mont. Code Ann. § 50-71-201.  Bentley is correct on this issue so far as it is a factual dispute for a jury to resolve.

The WDEA protects "good faith 'whistle blower[s].' "  Krebs v. Ryan

<u>Oldsmobile</u>, 843 P.2d 312, 315 (Mont. 1992).  Here, Bentley reported to ConocoPhillips' Employee Assistance Program concerns about "long work hours and number of days in a row [the operators] work" causing safety issues due to workers being exhausted on the job.  EAP Notes, Ex. E.  ConocoPhillips' records note Bentley's report sought "to create a safer work environment."  <u>Id.</u>  Filing a report about fatigue and risks posed to himself and his co-workers is a complaint that falls within Montana's statutory policy requiring employers to provide "employment that is safe."  Mont. Code Ann. § 50-71-201.  In short, this could suffice as a report of a violation of public policy.

ConocoPhillips challenges this conclusion in two ways.  First, it argues Bentley did not report a violation of public policy because "[n]o one was injured working this schedule."  Def.'s Resp. 28-29 (dkt #52).  The WDEA, however, protects good faith whistle blowers.  <u>Krebs</u>, 843 P.2d at 315.  The fact that no one had actually been hurt, which Bentley disputes, is irrelevant because it does not mean his report was made in bad faith.

Second, ConocoPhillips argues Bentley cannot rely on a statute that generically requires a safe workplace to convert his complaint on the schedule into a report of a violation of public policy.  It notes Bentley did not suggest ConocoPhillips was violating a more specific statute, such as a limitation on hours

16

operators can work, and thus his reported violation falls outside the scope of a statute concerned with the "public health, safety, or welfare." It also offers a policy argument to explain its point. To allow a generic safety statute to set a public policy standard would expose employers to a deluge of punitive damages claims. Terminated employees could offer any past discussion or complaint about his or her work schedule to establish a report of a public policy violation. Nothing in the WDEA suggests a reported public policy violation must be based on a statute that identifies a specific violation, such as working more than a certain number of hours. At the same time, ConocoPhillips' policy argument is misleading. Bentley is not mining the record to convert an offhand scheduling comment into a reported safety violation. Bentley informed his employer of workplace safety issues. ConocoPhillips noted that Bentley had "safety concerns" and he sought to "create a safer work environment." EAP Notes, Ex. E. Whether he was wrongfully discharged "for reporting a violation of public policy" is a factual question that turns on whether he was retaliated against for being a good faith whistle blower on fatigue and safety. If a jury finds he was, punitive damages are on the table.

## V. Conclusion

Based on the foregoing,

17

IT IS HEREBY ORDERED that Plaintiff Bentley's Motion for Summary Judgment on Unpaid Wages, Unpaid Overtime, and Wrongful Inducement (dkt #38) is DENIED.

IT IS FURTHER ORDERED that Defendant ConocoPhillips Pipeline Company's Cross Motion and Motion for Summary Judgment (dkt #51) is GRANTED in part and DENIED in part.  ConocoPhillips is entitled to summary judgment on Counts 1 through 7 of Bentley's Complaint.  This leaves failure to pay overtime (Count 8), wrongful discharge (Count 9), and punitive damages (Count 10) to be resolved at trial.

Dated this 14th day of May, 2010.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT